

**CT Corporation**
**Service of Process Notification**
04/11/2023
CT Log Number 543608897

## Service of Process Transmittal Summary

**TO:**     Registered Agent Department
Business Filings Incorporated (Recipient Account Only)
8020 Excelsior Dr Ste 200
Madison, WI 53717-1998

**RE:**     **Process Served in Delaware**

**FOR:**    AMERICOR FUNDING, LLC  (Domestic State: CA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | JANUARI LINZY, individually and on behalf of all others similarly situate vs. AMERICOR FUNDING, LLC |
| **CASE #:** | 2023CA001322 |
| **PROCESS SERVED ON:** | Business Filings Incorporated, Wilmington, DE |
| **DATE/METHOD OF SERVICE:** | By Process Server on 04/11/2023 at 14:50 |
| **JURISDICTION SERVED:** | Delaware |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Registered Agent Department  ctsop@bizfilings.com |
| **REGISTERED AGENT CONTACT:** | Business Filings International, Inc. |
| | 1209 Orange Street |
| | Wilmington, DE 19801 |
| | 844-832-8351 |
| | CTService@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                                    Tue, Apr 11, 2023
**Server Name:**                         Kevin Dunn

| Entity Served | AMERICOR FUNDING, LLC |
|---|---|
| Case Number | 2023CA001322 |
| Jurisdiction | DE |

| Inserts | | |
|---|---|---|
| | | |



Filing # 170561140 E-Filed 04/07/2023 11:49:21 AM

INITIALS_____ ID#_1458_

DATE_4/11/23_ TIME_2:17_

CT

## IN THE CIRCUIT COURT OF THE SECOND CIRCUIT
## IN AND FOR LEON COUNTY, FLORIDA

### CASE NO. 2023 CA 001322

JANUARI LINZY,
individually and
on behalf of all others similarly situated,

Plaintiff,

v.

AMERICOR FUNDING, LLC d/b/a
AMERICOR FINANCIAL,

Defendant.

_____/

**CLASS REPRESENTATION**

**JURY TRIAL DEMANDED**

### SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this Summons and a copy of the complaint or petition in this action on defendant:

AMERICOR FUNDING, LLC d/b/a AMERICOR FINANCIAL
Registered Agent: BUSINESS FILINGS INCORPORATED
108 WEST 13TH ST, WILMINGTON, DE 19801

Each defendant is required to serve written defenses to the complaint or petition on **MANUEL S. HIRALDO, HIRALDO P.A.,** Plaintiff's attorney, whose address is **401 E. Las Olas Blvd., Ste. 1400, Fort Lauderdale, FL 33301, Tel: (954) 400-4713,** within twenty (20) days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on _____

As Clerk of the Court

BY: _____  . 04/10/2023

As Deputy Clerk

Filing # 170561140 E-Filed 04/07/2023 11:49:21 AM

## IN THE CIRCUIT COURT OF THE SECOND CIRCUIT
## IN AND FOR LEON COUNTY, FLORIDA

### CASE NO.

JANUARI LINZY,
individually and
on behalf of all others similarly situated,

**CLASS REPRESENTATION**

      Plaintiff,

**JURY TRIAL DEMANDED**

v.

AMERICOR FUNDING, LLC d/b/a
AMERICOR FINANCIAL,

      Defendant.

_____/

### CLASS ACTION COMPLAINT

Plaintiff Januari Linzy brings this class action against Defendant Americor Funding, LLC d/b/a Americor Financial, and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

### NATURE OF THE ACTION

1.    This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (the "TCPA"), and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

2.    Defendant engages in unsolicited text message marketing, including to individuals who have registered their telephone numbers on the National Do-Not-Call Registry, and to those who have not provided Defendant with their prior express written consent as required by the FTSA.

1

3.      Defendant's unsolicited text message spam caused Plaintiff and the Class members harm, including violations of their statutory rights, trespass, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion. Defendant's text messages also occupied storage space on Plaintiff's and the Class members' telephones.

4.      Through this action, Plaintiff seeks an injunction, statutory damages, and/or actual liquidated damages on behalf of Plaintiff and the Class members, as defined below, and any other available legal or equitable remedies resulting from the unlawful actions of Defendant.

## PARTIES

5.      Plaintiff is, and at all times relevant hereto was, a citizen and resident of Leon County, Florida.

6.      Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that Plaintiff was the regular user of cellular telephone number that received Defendant's telephonic sales calls.

7.      Defendant is, and at all times relevant hereto was, a foreign corporation and a "telephone solicitor" as defined by Fla. Stat. § 501.059(f).

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Florida Rule of Civil Procedure 1.220 and Fla. Stat. § 26.012(2). The matter in controversy exceeds the sum or value of $30,000 exclusive of interest, costs, and attorney's fees.

9.      Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's contacts with this state.   Defendant initiated and directed telemarketing and/or advertising text messages into Florida. Specifically, Defendant initiated and directed the transmission of unsolicited advertisement or telemarketing text messages to Plaintiff's

2

cellular telephone number to sell goods, services or products in Florida.  Plaintiff's telephone

number has an area code (850) that specifically coincides with locations in Florida, and Plaintiff

received such messages while residing in and physically present in Florida.

10.     Venue for this action is proper in this Court pursuant to Fla. Stat. § 47.051 because

the cause of action accrued in this County.

<u>FACTS</u>

11.     On or about November 3, 2022 and November 4, 2022, Defendant sent the

following text message advertisements regarding its goods and services to Plaintiff's cellular

telephone:





12.     As demonstrated by the above screenshot, the purpose of Defendant's text messages was to solicit the sale of consumer goods and/or services.

13.     The messages also advertise and call attention to Defendant's products and related services.

14.     Plaintiff is the regular user of the telephone number that received the above telephonic sales calls.

15.     Plaintiff utilizes her cellular telephone number for personal purposes and the number is Plaintiff's residential telephone line.  In other words, Plaintiff's cellular telephone is

4

Plaintiff's home telephone number and Plaintiff makes and receives personal calls on her cellular telephone. Moreover, Plaintiff's cellular telephone is the primary means of reaching Plaintiff at her residence.

16.     Plaintiff registered her cellular telephone number on the National Do-Not-Call Registry and the number was listed on the registry for over 30 days prior to Defendant's first text message solicitation.

17.     Plaintiff was in Florida when Plaintiff received the above text message calls, and Defendant's violative conduct occurred in substantial part in Florida.

18.     Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

19.     To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform. Defendant's use of lengthy generic text messages (depicted above) further demonstrates that Defendant utilizes automated dialing systems to mass transmit solicitation texts to consumers.

20.     In fact, on its website, Defendant attempts to conceal in a lengthy privacy policy that it will harass consumers utilizing an "automatic texting system." americor.com/online-privacy-policy/.

21.     Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

22.     Defendant would be able to conduct its business operations without sending automated text messages to consumers.

23.     Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

24.     Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

25.     Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

26.     The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

27.     Compliance with the FTSA will not result in Defendant having to cease its business operations.

28.     Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

29.     Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

30.     Because a substantial part of Defendant's FTSA violations occurred in Florida, requiring Defendant's compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

6

31.     The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

32.     The Platform has the capacity to schedule the time and date for future transmission of text messages, which was in fact utilized by Defendant.

33.     The Platform also has an auto-reply function that results in the automatic transmission of text messages.

34.     Plaintiff never provided Defendant with express written consent authorizing Defendant to transmit telephonic sales calls to Plaintiff's cellular telephone number utilizing an automated system for the selection and dialing of telephone numbers.

35.     More specifically, Plaintiff never signed any type of authorization permitting or allowing the placement of a telephonic sales call by text message using an automated system for the selection and dialing of telephone numbers.

36.     Since July 1, 2021, on information and belief, Defendant sent at least 50 text message solicitations to as many consumers in Florida.

37.     Defendant's unsolicited text message spam caused Plaintiff and the Class members harm, including violations of their statutory rights, trespass, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion. Defendant's text messages also occupied storage space on Plaintiff's and the Class members' telephones.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

38.     Plaintiff brings this lawsuit as a class action on behalf of Plaintiff individually and on behalf of all other similarly situated persons as a class action pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3). The Classes that Plaintiff seeks to represent are defined as:

7

**DNC Class**: All persons in the United States who from four years prior to the filing of this action through the date of class certification (1) Defendant, or anyone on Defendant's behalf, (2) placed more than one text message call within any 12-month period; (3) where the person's telephone number that had been listed on the National Do Not Call Registry for at least thirty days; (4) regarding Defendant's property, goods, and/or services; (5) who did not purchase or transact business with Defendant during the eighteen months immediately preceding the date of the first message; and (6) who did not contact Defendant during the three months immediately preceding the date of the first message with an inquiry about a product, good, or service offered by Defendant.

**FTSA Class**: All persons in Florida who, (1) were sent a more than one text message regarding Defendant's property, goods, and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff, (3) from July 1, 2021 through the date of class certification.

39.     Defendant and its employees or agents are excluded from the Class.

**NUMEROSITY**

40.     Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to at least 50 persons. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

41.     The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

42.     There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Class are:

(a) Whether Defendant initiated telephonic sales calls to Plaintiff and the Class members;

8

(b) Whether Defendant can meet its burden of showing that it had prior express written consent to make such calls;

(c) Whether Defendant placed solicitations to individuals who registered their telephone numbers on the National Do-Not-Call Registry; and

(d) Whether Defendant is liable for damages, and the amount of such damages.

43.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits telephonic sales calls without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

TYPICALITY

44.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

PROTECTING THE INTERESTS OF THE CLASS MEMBERS

45.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

SUPERIORITY

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate

claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

47.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATIONS OF 47 U.S.C. § 227(c) AND 64.1200(c)**
**(On Behalf of Plaintiff and the DNC Class)**

48.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 47 as if fully set forth herein.

49.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

50.     Per 47 C.F.R. § 64.1200(e), § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

51.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

52.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

53.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and DNC Class members received more than one text message in a 12-month period from Defendant in violation of 47 C.F.R. § 64.1200.

54.     As a result of Defendant's conduct as alleged herein, Plaintiff and the DNC Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the DNC Class.

**COUNT II**
**VIOLATION OF FLA. STAT. § 501.059**
**(On Behalf of Plaintiff and the FTSA Class)**

55.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 47 as if fully set forth herein.

56.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

57.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will

11

or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

58.    "Prior express written consent" means an agreement in writing that:

1.  Bears the signature of the called party;

2.  Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3.  Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4.  Includes a clear and conspicuous disclosure informing the called party that:

a.  By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

b.  He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services. Fla. Stat. § 501.059(1)(g).

59.    Defendant failed to secure prior express written consent from Plaintiff and the Class members.

60.    In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

61.    Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

12

62.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.  Plaintiff and the Class members are also entitled to an injunction against future calls. *Id*.

63.     Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a)  An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b)  An award of statutory damages and/or actual liquidated damages for Plaintiff and each member of the Classes as applicable under the FTSA and/or TCPA;

c)  An order declaring that Defendant's actions, as set out above, violate the FTSA and TCPA;

d)  An injunction requiring Defendant to cease all telephonic sales calls made without express written consent, and to otherwise protect the interests of the Class;

e)  An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list

f)  Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

13

DATED: April 7, 2023

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**DAPEER LAW, P.A.**
Rachel Dapeer
Florida Bar No. 108039
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
T: 305-610-5223
*rachel@dapeer.com*

Filing # 170561140 E-Filed 04/07/2023 11:49:21 AM

IN THE CIRCUIT COURT OF THE SECOND CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

CASE NO.

JANUARI LINZY,
individually and
on behalf of all others similarly situated,

Plaintiff,

v.

AMERICOR FUNDING, LLC d/b/a
AMERICOR FINANCIAL,

Defendant.
_____/

**CLASS REPRESENTATION**

**JURY TRIAL DEMANDED**

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff, by and through the undersigned counsel, hereby respectfully moves this Court for an

Order certifying this case as a class action pursuant to Fla. R. Civ. P. 1.220(a) and (b)(3).

## I.    INTRODUCTION

This case involves Defendant's violations of the Telephone Solicitation provisions of the

Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, and Telephone Consumer Protection

Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"). Federal law prohibits soliciting individuals who have placed

their telephone numbers on the National Do-Not-Call Registry. Florida law proscribes the sending of

telemarketing calls, defined to include text messages sent "for the purpose of soliciting a sale of…goods

or services" or to be used to solicit a sale of good or services. Fla. Stat. § 501.059(1)(j). Absent prior,

express consent, no entity is permitted to "make or knowingly allow [to be made]" a telephonic sales

call utilizing an "automated system for the dialing or selection of telephone numbers." § 501.059(8)(a).

Anyone who receives a proscribed telephonic sales call can file suit to enjoin such action and to recover

up to $500.00 in statutory damages. § 501.059(10). If the violations were knowing and/or willful, courts

are permitted to treble such damages. *Id.* Notwithstanding such clear law, Defendant delivered spam, telemarketing text messages to the cell phone numbers of Plaintiff and all members of the putative Class. To deliver such text messages *en masse*, Defendant utilized an "automated system for the dialing or selection" of the phone numbers, and did not secure valid prior express consent to deliver any of the text messages.

This case is eminently suitable for class treatment. Class treatment of the claims alleged here—which entitle Class Members to, at most, $500.00-$1,500.00 in individual damages—is far superior to any other form of adjudication, and common issues of law and fact clearly predominate over any individual issues. There are two major issues in this litigation: (1) did the content of the text messages constitute "telemarketing" material, and (2) did Defendant utilize an "automated system for the dialing or selection" of the telephone numbers sent the text messages. Both issues are subject to common proof and are subject to common resolution. Sending text messages advertising a current deal or coupon code is either telemarketing or it is not, the dialing system Defendant utilizes is either an "automated system" or it is not. Whatever the answer, however, it is the same for all members of the Class.

Moreover, there is no question the class is adequately defined with reference to objective criteria, that Plaintiff and Class Counsel are and will be adequate representatives, and that joinder of all individual claims would be impracticable. As such, and for the reasons more fully explained below, Plaintiff respectfully submits that the instant motion should be granted.

## II.      PROPOSED CLASSES

Based upon these facts and allegations in the operative complaint, and as forthcoming discovery will support, Plaintiff seeks to represent two classes defined as follows:

> **DNC Class: All persons in the United States who from four years prior to the filing of this action through the date of class certification (1) Defendant, or anyone on Defendant's behalf, (2) placed more**

than one text message call within any 12-month period; (3) where the person's telephone number that had been listed on the National Do Not Call Registry for at least thirty days; (4) regarding Defendant's property, goods, and/or services; (5) who did not purchase or transact business with Defendant during the eighteen months immediately preceding the date of the first message; and (6) who did not contact Defendant during the three months immediately preceding the date of the first message with an inquiry about a product, good, or service offered by Defendant.

**FTSA Class**: All persons in Florida who, (1) were sent a more than one text message regarding Defendant's property, goods, and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff, (3) from July 1, 2021 through the date of class certification.

## III.   LEGAL STANDARD

The class action process is intended to address situations "when the court is faced with a multiplicity of individual actions" and that process "has a real and meaningful position in the administration of justice to address the ever-increasing caseload burden placed upon our trial courts." *Sosa v. Safeway Premium Fin. Co.,* 73 So. 3d 91, 103, 105 (Fla. 2011).[1] To certify a class, a trial court must analyze whether the class representative and putative class members meet the requirements for class certification pursuant to Florida Rule of Civil Procedure 1.220. *Id.* A trial court should resolve doubts concerning certification in favor of certification, especially in the early stages of litigation. *Id.* Courts should analyze the merits of a case only to the extent necessary to determine whether to certify a class. *Id.*

Rule 1.220(a)(1)-(4) requires a showing of numerosity, commonality, typicality, and adequacy. If these requirements are satisfied, at least one of the three criteria of Rule

---

[1] All citations and quotations omitted and emphasis supplied unless specified otherwise.

1.220(b)(l)-(3) must also be met. *See, e.g., Fla. Dep't of Agr. & Consumer Servs. v. City of Pompano Beach*, 829 So. 2d 928, 930 (Fla. 4th DCA 2002).

To the extent that the Court finds that additional factual showings are necessary, it should reserve ruling, allow further discovery, and require a further showing on those elements, rather than denying the class certification motion. *See Cordell v. World Ins. Co.*, 355 So. 2d 479 (Fla. 1st DCA 1978) (trial court should have reserved ruling on class until plaintiffs had opportunity for discovery); *Whigum v. Heilig-Meyers Furniture, Inc.*, 682 So. 2d 643, 645 (Fla. 1st  DCA 1996) (trial court prematurely denied class certification before plaintiff had opportunity for discovery); *Commonwealth Land Title Ins. Co. v. Higgins*, 975 So. 2d 1169, 1175 (Fla. 1st DCA 2008) (before deciding class certification, trial court must permit discovery that is "sufficiently broad" to give plaintiff realistic opportunity to meet class certification requirements); *Coastal Physician Servs. of Broward Cnty., Inc. v. Ortiz*, 720 So. 2d 324, 326-327 (Fla. 4th DCA 1998) (same). Trial courts are afforded broad discretion in determining whether class certification prerequisites and requirements are satisfied. *See Sosa*, 73 So. 3d at 98. But, if a plaintiff demonstrates that the aforementioned requirements are satisfied, a court abuses its discretion by declining to certify the class. *See Disc. Sleep of Ocala, LLC v. City of Ocala*, 245 So. 3d 842 (Fla. 5th DCA 2018) (reversing order denying class certification because all Rule 1.220 requirements were satisfied and holding that class should have been certified).

## IV.   THE   THRESHOLD   STANDING   REQUIREMENT   FOR   CLASS CERTIFICATION IS SATISFIED

Prior to the Rule 1.220 analysis, it must be determined as a threshold matter that Plaintiff possesses standing to prosecute the claim. *Sosa*, 73 So. 3d at 116 ("A threshold inquiry in a motion for

class certification is whether the class representative has standing to represent the putative class members."). A plaintiff has standing to sue so long as they allege—and eventually show—either a legal or a factual injury. *Id.* Unlike federal courts, Florida state courts possess plenary jurisdiction. As such, if a statute creates a new cause of action and prescribes statutory damages, plaintiffs that allege a statutory violation—and nothing more—are entitled to the statutory damages (if successful) and thus have standing to sue in Florida state courts. *See Fla. Wildlife Fed'n v. State Dep't of Envtl. Regulation,* 390 So. 2d 64, 66–67 (Fla. 1980) ("[P]rivate citizens of Florida may institute suit under [the] statute without a showing of special injury."); *Laughlin v. Household Bank, Ltd.,* 969 So. 2d 509 (Fla. 1st DCA 2007) ("Laughlin is not required to prove actual damages, but only a violation of one of the prohibited practices in the FCCPA.").

Here, Plaintiff alleges he received text messages from Defendant in violation of the FTSA, pursuant to which he possesses a cause of action and is entitled to statutory damages of $500 per text message. Additionally, Plaintiff is entitled to and seeks declaratory and injunctive relief under the FTSA. As such, he alleges a legal injury sufficient to establish standing to sue in Florida courts.

## V.     THE CLASS SATISFIES EACH RULE 1.220(a) PREREQUISITE

### A.     The Numerosity Requirement is Satisfied

Fla. R. Civ. P. 1.220(a)(l) requires that "the members of the class be so numerous that separate joinder of each member is impracticable." *Id.* Case law holds that the numerosity test is presumed satisfied with at least 40-50 class members. *See, e.g., Terry L. Baum, P.A.* v. *Campb ell,* 827 So. 2d 261, 266 (Fla. 5th DCA 2002). In this case, any common-sense assumptions clearly indicate the joinder would be impracticable, with class size ranging well over 40, and likely into the thousands. Although the precise number of Class Members is unknown to Plaintiff at this time and can only be determined by appropriate discovery, Plaintiff is informed

and believes that the classes of persons affected by Defendant's unlawful acts consists of at least 100 persons.

While discovery has not yet occurred and thus confirmed that the numerosity requirement is satisfied, the important point at this juncture is that the class is "adequately defined" such that it will be possible (through discovery) to establish that the numerosity requirement is met. *See Leibell v. Miami-Dade County*, 84 So. 3d 1078, 1083 (Fla. 3d DCA 2012) (to establish numerosity, class must be adequately defined and clearly ascertainable). A class is adequately defined if its members are capable of determination through objective criteria (and not subjective criteria such as, for example, state of mind). *See Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021) (explaining that "adequately defined" and "clearly ascertainable" requires the same thing: that the class be capable of determination through objective criteria).[2] Here, the criteria for class membership are all objective and determinable. As such, the numerosity requirement is satisfied here, as discovery will confirm. *See, e.g., Mohamed v. Off Lease Only, Inc.*, 320 F.R.D. 301, 311 (S.D. Fla. 2017) (class defined with reference to receipt of text messages with advertising materials was objective criteria); *Grant v. Regal Auto. Grp., Inc.*, 2020 U.S. Dist. LEXIS 91897, at *7-10 (M.D. Fla. May 27, 2020) (holding that plaintiff had demonstrated class membership was based on objective criteria).

### B. Commonality Requirement is Satisfied

Rule 1. 220(a)(2) requires that there be questions of law or fact common to the class. Fla. R. Civ. P. 1 .220(a)(2). The primary concern is whether the claims arise from the same practice or course of conduct and are based on the same legal theory. *Sosa,* 73 So. 3d at 107-108. The threshold of the commonality requirement is not high. *Id.* A mere factual difference

---

[2] Because Rule 1.220 is patterned after Fed. R. Civ. P. 23, Florida courts look to federal interpretation of Rule 23 as part of its analysis. *See Powell v. River Ranch Property Owners Asso.*, 522 So. 2d 69, 70 (Fla. 2d DCA 1988).

between class members does not necessarily preclude satisfaction of the commonality requirement. *Id.* Moreover, individualized damage inquiries will also not preclude class certification. *Id.* As described in *Sosa,*

> The commonality requirement is aimed at determining whether there is a need for, and benefit derived from, class treatment...More specifically, the commonality prong only requires that resolution of a class action affect all or a substantial number of the class members, and that the subject of the class action presents a question of common or general interest ... The commonality requirement is satisfied if the common or general interest of the class members is in the object of the action, the result sought, or the general question implicated in the action... This core of the commonality requirement is satisfied if the questions linking the class members are substantially related to the resolution of the litigation, even if the individuals are not identically situated.
> *Id.*

Based on this liberal *Sosa* standard, commonality is easily satisfied in this case. The questions of law and fact that are common to Plaintiff's and the Class members' claims include, but are not limited to, the following: (a) whether the dialing system utilized by Defendant is an "automated system for the dialing or selection of telephone numbers" and (b) whether the content of the text messages delivered by Defendant constitutes telemarketing material. Both are issues the resolution of which will apply equally to all members of the Class. *See Williams v. Bluestem Brands, Inc.,* 2019 U.S. Dist. LEXIS 56655, at *8 (M.D. Fla. Apr. 2, 2019) (whether a dialing system is "automated" within the meaning of a similar statute as at issue here constituted a "common question"); *Gonzalez v. TCR Sports Broad. Holding, LLP,* 2019 U.S. Dist. LEXIS 87506, at *6 (S.D. Fla. May 24, 2019) (same); *Jackson v. Paycron Inc.,* 2019 U.S. Dist. LEXIS 80325 (S.D. Fla. May 13, 2019) (whether content was "telemarketing" was common question). Moreover, all members of the Class allege claims based on the same injury—violation of Fla. Stat. § 501.059—for which they entitled to the same statutory damages, and, as such, commonality is

established. *Sosa*, 73 So. 3d at 108.

### C.    Plaintiff's Claims are Typical of the Class

The third prong of Rule l.220(a) requires that the claims or defenses of the representative party be typical of the claim or defenses of the class. Fla. R. Civ. P. l.220(a)(3). The key inquiry for a trial court to determine whether a proposed class satisfies the typicality requirement is whether the class ***representative*** possesses the same legal interest and has endured the same legal injury as the class ***members***. *Sosa,* 73 So. 3d at 114-115.[3] The test for typicality is not demanding and focuses generally on the similarities between the class representative and the putative class members. *Id.* Furthermore, mere factual differences between the class representative's claims and the claims of the class members will not defeat typicality. *Id.* Rather, the typicality requirement is satisfied when there is a strong similarity in the legal theories upon which those claims are based and when the claims of the class representative and class members are not antagonistic to one another. *Id.*

As set forth above, Plaintiff's claim is based on the same legal theory as those of the Class: Defendant violated the FTSA by placing telemarketing sales calls via an "automated system for the dialing or selection of telephone numbers" and did not obtain valid consent prior to doing so. Furthermore, Plaintiff seeks the same remedies and damages as Class Members: $500.00 (or, if trebled, $1,500.00) in statutory damages and to enjoin future violations. *Morgan*, 33 So. 3d at 65 ("The typicality requirement may be satisfied despite substantial factual differences . . . when there is a strong similarity of legal theories."). Because both Plaintiff and the putative class allege the same violation and harm,

---

[3] In other words, the typicality and commonality requirements are very similar—the difference being that rather than comparing putative class members' claims in general, the comparison is between the named plaintiff versus unnamed plaintiffs. *See Eufaula Drugs, Inc. v. TDI Managed Care Servs.*, 250 F.R.D. 670, 676 (M.D. Ala. 2008).

and claim the same remedy, Plaintiff does not have interests antagonistic to the Class, and there is no

issue specific to Plaintiff that threatens to overwhelm the litigation. *See Koos v. First Nat'l Bank*, 496

F.2d 1162, 1164 (7th Cir. 1974) ("[T]ypicality is destroyed only" if issues unique to the named plaintiffs

"are likely to usurp a significant portion of plaintiff's time and energy, distracting him from

representing" the class members' interests). Thus, the typicality requirement is also satisfied here. *See*

*Sosa*, 73 So. 3d at 115 (where claims were based on violations of the same statute, typicality prerequisite

was met).

### D.    The Adequacy of Representation Requirement is Satisfied

To grant class certification, a trial court must determine that the class representative satisfies the

adequacy requirement of rule 1 .220(a), i.e., it must find that "the representative party can fairly and

adequately protect and represent the interests of each member of the class." *Sosa,* 73 So. 3d at 115. This

inquiry serves to uncover conflicts of interest between the presumptive class representative and the class

he or she seeks to represent. *Id.* A trial court's inquiry concerning whether the adequacy requirement is

satisfied contains two prongs. The first concerns the qualifications, experience, and ability of class

counsel to conduct the litigation. *Id.* The second pertains to whether the class representative's interests

are antagonistic to the interests of the classmembers. *Id.*

Here, Plaintiff has the exact same interest as the other members of the putative Classes—

enforcement of FTSA and establishing entitlement to statutory damages prescribed therein. His pursuit

of this matter in retaining counsel to enforce his and others' rights demonstrates that she will be a zealous

advocate for the proposed class. Moreover, Plaintiff has no interests antagonistic to those of the

proposed Class.

In addition, Plaintiff's counsel are well-respected members of the legal community, have

regularly engaged in major complex litigation involving the federal TCPA and the FTSA, and have

successfully litigated numerous class actions and complex litigation in numerous fields and areas of

law. Proposed class counsel have already diligently investigated, prosecuted, and dedicated substantial resources to the investigation of the claims at issue in this action, and will continue to do so throughout its pendency. *Id.* Thus, both Plaintiff and his counsel will adequately represent the class.

## VI.   THE CLASS MEETS THE REQUIREMENTS OF FLA. R. CIV. P. 1.220(B)(3)

In addition to satisfying the four elements of Fla. R. Civ. P. 1.220(a), class certification is proper under 1.220(b)(3). To meet the requirements of Rule 1.220(b)(3), the party moving for class certification must establish that the common questions of law and fact predominate over individual class member claims and that class treatment is superior to alternative methods of adjudication. *Sosa,* 73 So. 3d at 111-112.

### A. Common Questions Predominate Over Any Individual Questions

Florida courts have held that common questions of fact predominate when the defendant acts toward the class members in a similar or common way. *See Stone v. CompuServe Interactive Servs.,* Inc., 804 So. 2d 383, 388 (Fla. 4th DCA 2001). The methodology employed by a trial court in determining whether class claims predominate over individual claims involves a proof-based inquiry. More specifically, a class representative establishes predominance if he or she demonstrates a reasonable methodology for generalized proof of class-wide impact. *Id.* A class representative accomplishes this if he or she, by proving his or her own individual case, necessarily proves the cases of the other class members. *Id.* If, in examining the claims, a trial court finds that common issues of fact and law impact more substantially the efforts of every class member to prove liability than the individual issues that may arise, then class claims predominate. *Id.* However, it is not the burden of the class representative to illustrate that all questions of fact or law are common. *Id.*

Rather, the class representative must only demonstrate that some questions are common, and that they predominate over individual questions. *Id.*

As federal courts have explained, perhaps the surest way of determining whether common issues predominate is to take the elements of the claims and defenses at issue and predict whether the individual elements will be proven by common or individualized proof. *See Brown v. Electrolux Home Products, Inc.*, 817 F. 3d 1225, 1234 (11th Cir. 2016). Here, the elements of Plaintiffs' claim are that class members (a) receive a telemarketing sales text message (b) via an "automated system for the dialing or selection of telephone numbers." Both elements will be demonstrated through common proof. That class members received a telemarketing sales text will be shown through evidence from Defendants that text campaign content was successfully transmitted to the respective telephone numbers. Whether such content constitutes "telemarketing" is subject to the same answer for all Class Members. Moreover, discovery will show that Defendants utilized the same dialing system to deliver every text message—whether such system qualifies as an "automated system for the dialing or selection of phone numbers" is a question of law to be resolved by this Court, and such resolution will equally apply to all Class Members.

Moreover, the primary affirmative defense here is likely to be Defendant's claim that Class Members consented to receive telemarketing sales calls. But such "consent"—which is not actually valid consent—will be based on form language equally applicable to every member of the Class. As such, common proof—or rather, the lack thereof—dominates Defendants' defense as well.

As such, the predominance requirement of Rule 1.220(b)(3) is easily met here.

**B. Class Treatment is Superior**

Finally, class certification is proper pursuant to Rule 1.220(b)(3) because class treatment is superior to any alternative method of adjudication. The three factors relevant to the superiority analysis are: (1) whether class treatment is the only economically-viable remedy; (2) whether the individual damages are significant enough to justify individual prosecution; and (3) whether class treatment is manageable as compared to alternative methods of adjudication. *City of Ocala*, 245 So. 3d at 856.

Here, all three factors counsel in favor of finding class treatment to be superior. Maximum statutory damages are $500.00-$1,500.00 per text message, meaning class treatment is the only economically-viable remedy precisely because individual damages are insufficient to justify individual prosecution. *See C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 691 (S.D. Fla. 2014) (the same amount in statutory damages supported finding of superiority because such damages are insufficient to warrant individual prosecution of the claim). Moreover, because both liability and damages are straightforward, statutorily-based issues, class treatment is manageable—certainly, it is ***more*** manageable than thousands of individual suits, discovery phases, expert disclosures, deposition testimony, and ultimately adjudications of the merits. *See Morgan v. Coats*, 33 So. 3d 59, 67 (Fla. 2d DCA 2010) ("We also believe that due to the large number of potential class members and the fact that their claims are based on the same course of conduct, the litigation would be more manageable if it was subject to class action status rather than individual suits."); *see also Klay v. Humana, Inc.*, 382 F.3d 1241, 1272-73 (11th Cir. 2004) (because superiority is a comparative analysis, and because it is extremely unlikely litigation of thousands of claims will be more manageable than management of a class action, manageability concerns "will rarely, if ever, be in itself sufficient to prevent certification of a class.").

Accordingly, certification of the proposed class under Rule 1.220(b)(3) is appropriate.

**WHEREFORE,** Plaintiff, individually and on behalf of the proposed class, respectfully requests that the Court (1) continue Plaintiff's Motion for Class Certification and defer its ruling on Plaintiff's Motion; (2) allow for the Parties to engage in discovery on class-wide issues; (3) grant Plaintiff leave to file a full renewed memorandum in support of the Motion for Class Certification upon the conclusion of class-wide discovery; (4) in the alternative, grant Plaintiff's Motion for Class Certification, appoint Plaintiff as Class Representative and the undersigned as Class Counsel pursuant to Rule 1.220(g), and direct the Parties to jointly submit a proposed Notice Plan within sixty (60) days of the Court's Order, and (5) provide all other and further relief that the Court deems equitable and just.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that this document was served with a copy of the Complaint.

DATED: April 7, 2023

Respectfully Submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713
*Counsel for Plaintiff*

IN THE SECOND JUDICIAL CIRCUIT IN AND FOR LEON COUNTY, FLORIDA

**JANUARI LINZY**

      Plaintiff

vs                                         CASE NO.: 2023 CA 001322

**AMERICO FUNDING LLC**

      Defendant

_____/

## UNIFORM ORDER FOR ACTIVE, DIFFERENTIAL CIVIL CASE MANAGEMENT

In compliance with Florida Supreme Court directives on active, differential civil case management established in Supreme Court Administrative Order AOSC20-23, Amendment 12, and Second Judicial Circuit Administrative Order 21 - 04, all parties in the above-styled cause are bound by this Case Management Order.

**Plaintiff shall serve this order on all parties with service of the original complaint. Strict enforcement is required unless good cause is shown for an exception or as otherwise required by law.**

### I. PROJECTED TRIAL DATE

All COUNTY COURT Civil cases are designated STREAMLINED CASES with a projected trial date of 360 days from the date of filing of the complaint.

All CIRCUIT COURT Civil cases for which the complaint does not demand trial by jury are designated STREAMLINED CASES with a projected trial date of 360 days from the date of filing of the complaint.

All CIRCUIT COURT Civil cases for which the complaint demands trial by jury are GENERAL CASES with a projected trial date of 540 days from the date of filing of the complaint.

A change in the above designations may be made by the presiding judge on the judge's own initiative or upon motion of any party. Should any party assert that a civil case should be treated other than designated above, such party shall file a written motion requesting such change and the motion shall be expeditiously resolved by the

presiding Judge.

## II. Notice that Cause is at Issue and Firm Trial Date

The parties must file a Joint Notice that the Cause is at Issue no later than 15 days after the pleadings are closed. In the event of a dispute, either party may file a motion and request a hearing to determine if the cause is at issue.

Upon joint notice or judicial determination that the cause is at issue, the Court will schedule a Firm Trial Date consistent with the Projected Trial Date above unless either party requests a different date in their Notice that the Cause is at Issue. Should either party request a Firm Trial Date different than the Projected Trial Date, the Plaintiff shall expeditiously set a case management conference to determine the Firm Trial Date.

## III. Mandatory Deadlines for Streamlined Cases

If this case is designated as a STREAMLINED CASE, the following deadlines shall apply and, by directive of the Florida Supreme Court, must be strictly enforced unless good cause is shown for an exception or as otherwise required by law:

120 days after filing: Service of Complaints
150 days after filing: Service under any Extension of Time
180 days after filing: Adding New Parties
210 days after filing: Resolution of Objections to Pleadings and Motions to Dismiss
270 days after filing: Completion of Fact and Expert Discovery
270 days after filing: Resolution of Pretrial Motions, including Motions for Summary Judgment

## IV. Mandatory Deadlines for General Cases

If this case is designated as a GENERAL CASE, the following deadlines shall apply and, by directive of the Florida Supreme Court, must be strictly enforced unless good cause is shown for an exception or as otherwise required by law:

120 days after filing: Service of Complaints
180 days after filing: Service under any Extension of Time
210 days after filing: Adding New Parties
270 days after filing: Resolution of Objections to Pleadings and Motions to Dismiss
400 days after filing: Completion of Fact and Expert Discovery
450 days after filing: Resolution of Pretrial Motions, including Motions for Summary Judgment

## V. Mediation

All parties must mediate unless excused by court order for good cause shown or as otherwise required by law and in compliance with Rules of Civil Procedure 1.700 - 1.730.

## VI. Noncompliance

**By Order of the Florida Supreme Court, strict, good faith compliance with this Uniform Order for Active, Differential Civil Case Management is required unless good cause is shown for an exception or as otherwise required by law. These procedures and time standards do not supplant any existing rule, statute, or law.**

**Failure to appear at the pretrial conference or failure to comply with the terms of this order may result in such sanctions as are just and lawful including: an immediate ex parte hearing and entry of final judgment of default or dismissal, limitation of witnesses or other evidence, striking of claims or defenses, or imposition of attorney fees or costs.**

## VII. Hearings by Audio-Video Technology

During the COVID-19 Public Health Emergency, all hearings other than jury selection and trial shall be conducted consistent with Florida Supreme Court andSecond Circuit Administrative Order by audio-video technology. Each judge isresponsible to establish the process for such audio-video technology hearings bynotice of hearing including technology access.After the conclusion of the COVID-19 Public Health Emergency all hearings otherthan jury selection and trial may be conducted by audio-video technology. Eachjudge is responsible to establish the process for such audio-video technologyhearings by notice of hearing including technology access.

Monday, April 10, 2023
ANGELA C DEMPSEY CIRCUIT JUDGE

**ANGELA C DEMPSEY**
Circuit Judge

## SUPPLEMENT TO CIVIL CASE MANAGEMENT ORDER

If, at the time the Uniform Order For Active Differential Civil Case Management ("Order") is filed, service on the Defendant(s) has already been made or process provided to a process server, the Plaintiff may comply with the second (in bold) paragraph of the Order by promptly providing a copy of the Order to the Defendant(s) by U.S. Mail or by Electronic Mail. The Plaintiff shall then file a certificate of service documenting that this Order has been provided to the Defendant(s) in this manner.